IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOSE CRUZ SAUCEDO GONZALEZ,<br><br>Petitioner,<br><br>vs.<br><br>TODD BLANCHE, in his official capacity as Attorney General of the United States; TODD LYONS, in his official capacity as Acting Director, Immigration and Customs Enforcement; ROB JEFFREYS, in his official capacity of Director of Nebraska Department of Corrections; and DEPARTMENT OF HOMELAND SECURITY,<br><br>Respondents. | **8:26CV518**<br><br>**MEMORANDUM AND ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 AND COMPLAINT FOR INJUNCTIVE RELIEF** |

Petitioner Jose Cruz Saucedo Gonzalez, a native and citizen of Mexico, has filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and Complaint for Injunctive Relief, Filing 1, challenging his allegedly unlawful detention by Immigration and Customs Enforcement (ICE) at the McCook Detention Facility in McCook, Nebraska. Saucedo Gonzalez was taken into custody by ICE on August 11, 2026, when ICE officers conducted an apparently targeted immigration enforcement. Filing 1 at 4 (¶ 10). Saucedo Gonzalez asserts, "The issue is whether the Petitioner should be mandatorily detained under 8 U.S.C. § 1225(b)(2) or under 8 U.S.C. § 1226(a) and therefore be entitled to a bond hearing." Filing 1 at 4 (¶ 14). His only claim is alleged violation of his right to procedural due process under the Fifth Amendment to the United States Constitution, Filing 1 at 8. He seeks *inter alia* either his immediate release or a bond hearing. Filing 1 at 10 (¶¶ 42–43). For the reasons stated below, Saucedo Gonzalez's Petition is denied because it appears from the Petition that he is not entitled to a writ of habeas corpus. 28 U.S.C. § 2243.

## I. INTRODUCTION

Saucedo Gonzalez's only allegations in the Statement of Facts section of his Petition besides the allegation of his citizenship are the following:

> 10. On August 11, 2026, ICE officers conducted a stop that was apparently operationally necessary for targeted immigration enforcement.
>
> 11. According to the arrest report, the officer conducting the stop has successfully completed ICE administered vehicle stop training.
>
> 12. The Petitioner was given a field interview and a warrant for arrest was immediately issued.
>
> 13. The Petitioner was subsequently detained and remains in custody in McCook Detention Center.

Filing 1 at 4 (¶¶ 10–13).

Saucedo Gonzalez states in his Petition, "The issue is whether the Petitioner should be mandatorily detained under 8 U.S.C. § 1225(b)(2) or under 8 U.S.C. § 1226(a) and therefore be entitled to a bond hearing." Filing 1 at 4 (¶ 14). He argues, "Case law and statutory construction principles show that the Petitioner is currently detained under § 1226(a)." Filing 1 at 5 (¶ 15).

In his only Claim for Relief, Saucedo Gonzalez alleges, "The mandatory detention of the Petitioner in McCook Detention Facility under § 1225(b) is inconsistent [with] and violates well-established principles of procedural due process." Filing 1 at 8 (¶ 31). He alleges that application of the three-part test in *Mathews v. Eldridge*, 424 U.S. 319 (1976), demonstrates the violation of his procedural due process rights. Filing 1 at 8–9 (¶¶ 33–38). He alleges further that he is neither a flight risk nor dangerous because he has "dutifully" been in communication with his attorney and has strong ties to the community through his employment and community service. Filing 1 at 9 (¶ 40).

As relief, Saucedo Gonzalez prays that the Court will grant the following:

> 41. Assume jurisdiction over this matter.

> 42. Order the immediate release of the Respondent due to the violation of procedural due process.
>
> 43. In the alternative, grant Petitioner a writ of habeas corpus directing the Respondents to provide the Petitioner with a bond hearing within.one.week.
>
> 44. Instruct the Department of Homeland of Security that they have burden of proof to show by clear and convincing evidence that continued detention is necessary to ameliorate the risk of flight or danger.
>
> 45. The presiding immigration judge must consider ability to pay a bond and the availability of release with conditions as sufficient to protect any government interest in preventing flight risk or danger.

Filing 1 at 10 (¶¶ 41–45).

No summonses have been requested, issued, or returned, and no Respondents have appeared so far.[1]

## II. LEGAL ANALYSIS

The statute that sets out the applicable procedure for § 2241 habeas actions, 28 U.S.C. § 2243, provides in part,

> A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.

28 U.S.C. § 2243. Here, it appears from the Petition that Saucedo Gonzalez is not entitled to a writ of habeas corpus. 28 U.S.C. § 2243. Thus, the Court will dispose of the Petition without ordering Respondents to show cause why habeas relief should not be granted. The Court's explanation of this disposition begins with a summary of the applicable standards for habeas relief pursuant to 28 U.S.C. § 2241.

[1] Because Saucedo Gonzalez has named a proper physical custodian, Rob Jeffreys in his official capacity as Director of Nebraska Department of Corrections, as the State Respondent, the Court is satisfied that it can address Saucedo Gonzalez's Petition. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434–35, 442, 450 n.18 (2004) (explaining that the physical custodian is the appropriate respondent on a § 2241 petition, absent special circumstances).

### A. Standards for § 2241 Habeas Relief

As pertinent here, the habeas statute at issue, 28 U.S.C. § 2241, provides in pertinent part as follows:

> (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. The order of a circuit judge shall be entered in the records of the district court of the district wherein the restraint complained of is had.
>
> * * *
>
> (c) The writ of habeas corpus shall not extend to a prisoner unless--
>
> > * * *
> >
> > (3) He is in custody in violation of the Constitution or laws or treaties of the United States . . . .

28 U.S.C. § 2241(a), (c)(3). "[A] habeas court is 'not bound in every case' to issue the writ." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (quoting *Ex parte Royall*, 117 U.S. 241, 251 (1886)). Instead, "[t]he habeas statute provides only that a writ of habeas corpus '*may* be granted.'" *Id.* (quoting 28 U.S.C. § 2241(a), with emphasis added by the Supreme Court).

"In enacting the present Title 28 of the United States Code [in 1948], Congress largely recodified the federal courts' pre-existing habeas authority in §§ 2241 and 2243, which, respectively, confer the power to grant the writ and direct the issuing court to 'dispose of the matter as law and justice require.'" *Jones v. Hendrix*, 599 U.S. 465, 473 (2023) (quoting 62 Stat 869, 964–65). "Habeas is at its core a remedy for unlawful executive detention." *Manaf*, 553 U.S. at 693 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 536 (2004) (plurality opinion)). To put it another way, "Habeas has traditionally been a means to secure *release* from unlawful detention. . . ." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) (emphasis in the original).

The Supreme Court has recognized that § 2241(c)(3) confers on a district court jurisdiction to hear habeas corpus challenges by aliens to the legality of their detention. *Rasul v. Bush*, 542

U.S. 466, 483–84 (2004) ("[Alien] Petitioners contend that they are being held in federal custody in violation of the laws of the United States. . . . Section 2241, by its terms, requires nothing more."); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) ("We note at the outset that the primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear these cases," which were brought by aliens challenging their detention after they were ordered removed (citing 28 U.S.C. § 2241(c)(3))).

District Courts in this Circuit and elsewhere agree that a habeas petitioner under § 2241 bears the burden of demonstrating by a preponderance of the evidence that his or her detention is unlawful. *See Maldonado v. Olson*, No. 25-CV-3142 (SRN/SGE), 2025 WL 2374411, at *4 (D. Minn. Aug. 15, 2025) (collecting cases).

**B. Saucedo Gonzalez Is Not Entitled to Relief under § 2241**

Saucedo Gonzalez cannot meet his burden to demonstrate that his detention is unlawful in light of controlling precedent. *See id.* (stating the burden of proof is on the petitioner). Indeed, he generally ignores that precedent.

*1. Saucedo Gonzalez Is Properly Detained under § 1225(b) not § 1226*

Saucedo Gonzalez first asserts, "The issue is whether the Petitioner should be mandatorily detained under 8 U.S.C. § 1225(b)(2) or under 8 U.S.C. § 1226(a) and therefore be entitled to a bond hearing." Filing 1 at 4 (¶ 14). Saucedo Gonzalez contends that he was not an "applicant for admission" under § 1225(b)(2) "because [he] was not on the threshold of entry when apprehended." Filing 1 at 7 (¶ 30). From this contention, he argues further that he is properly detained under § 1226 and entitled to a bond hearing. Filing 1 at 7 (¶ 30). These threshold contentions are foreclosed by controlling precedent of the Eighth Circuit Court of Appeals, which Saucedo Gonzalez never even mentions.

In *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), the Eighth Circuit rejected a reading of *Jennings v. Rodriguez*, 583 U.S. 281 (2018), as interpreting § 1225 to apply to aliens detained at the border and § 1226 to apply to aliens detained in the interior. 170 F.4th at 1136 (explaining that "this characterization was offered only as general background information" not as resolution of an interpretation issue). The Eighth Circuit explained that even if § 1226 generally authorizes the Government to detain certain aliens already in the country, "this does not preclude other statutory provisions—such as § 1225(b)(2)(A)—from also applying to such aliens." *Id.* (citing *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 505 (5th Cir. 2026), and 8 U.S.C. § 1225(a)(1)). The *Avila* court explained further that § 1225(a)(1) is not limited to an "arriving alien"; instead, it applies to "[a]n alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). *Id*. at 1133.

Although Saucedo Gonzalez makes no allegation about when, where, or how he entered the United States, nowhere in his Petition does he allege that he was admitted to the United States. *See* Filing 1 *passim*; *see also* 8 U.S.C. § 1225(a)(1) (defining an "applicant for admission" first as "[a]n alien present in the United States who has not been admitted" and alternatively as "an alien present in the United States . . . who arrives in the United States"). Saucedo Gonzalez has attached two "Continuation Page[s] for Form I-213," that is, pages from his Record of Deportable/Inadmissible Alien, stating that he had twice been arrested near Hidalgo, Texas, in 2003, and granted a Voluntary Return each time, but identifying no pending immigration matters. Filing 1 at 13. Because there is no evidence or even an allegation that Saucedo Gonzalez arrived at a port of entry and was admitted, he fell within the definition of an "applicant for admission" in § 1225(a) as interpreted by the Eighth Circuit when he was apprehended by ICE in August 2026.

Next, the court in *Avila* stated, "[Section] 1225(b)(2)(A) authorizes detention without bond for 'an alien who is an applicant for admission, if . . . an alien seeking admission is not clearly and

beyond a doubt entitled to be admitted.'" *Avila*, 170 F.4th at 1132 (quoting § 1225(b)(2)). In *Avila*, the Eighth Circuit soundly rejected a reading of § 1225(b)(2)(A) as treating "applicant for admission" and "seeking admission" as separate elements. 170 F.4th at 1133–35 (concluding that the two phrases were "equivalent," so that "seeking admission" was not a separate element under § 1225(b)(2)). No DHS or ICE official ever made any determination that Saucedo Gonzalez is "clearly and beyond a doubt entitled to be admitted," so Saucedo Gonzalez's detention is authorized under § 1225(b)(2)(A). Because Saucedo Gonzalez's detention is pursuant to § 1225(b), there is no statutory authorization for a bond hearing. *See Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018) (explaining that "neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings").

*2. Saucedo Gonzalez's Procedural Due Process Claim Is Meritless Under Controlling Law*

The Court does not find it necessary or appropriate to consider Saucedo Gonzalez's procedural due process claim—his only Claim for Relief—by applying the *Mathews* three-factor test on which Saucedo Gonzalez relies. *See* Filing 1 at 8–9 (Claim for Relief). For the reasons set out in the Court's decision in *Alberto Rodriguez v. Jeffreys*, No. 8:25CV714, 2025 WL 3754411, at *15–17 (D. Neb. Dec. 29, 2025), the Court denies Saucedo Gonzalez's claim of violation of his procedural due process rights.

Central to the analysis in *Alberto Rodriguez* is the fact that in *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024), the Eighth Circuit explained that "[t]he rule has been clear for decades: '[d]etention during deportation proceedings [i]s . . . constitutionally valid.'" *Banyee*, 115 F.4th at 931 (quoting *Demore v. Kim*, 538 U.S. 510, 523 (2003)). In both *Banyee* and *Demore*, the statute at issue was 8 U.S.C. § 1226(c), which—like § 1225(b) at issue in Saucedo Gonzalez's case—requires mandatory detention. *Id.* (citing *Demore*, 538 U.S. at 514). The Eighth Circuit explained,

> [In *Demore*, the Supreme Court] reaffirmed its "longstanding view that the [g]overnment may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Demore*, 538 U.S. at 526, 123 S.Ct. 1708. The reason, according to the Court, was that "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Id*. at 522, 123 S.Ct. 1708; *accord Mathews v. Diaz*, 426 U.S. 67, 79–80, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976). In other words, the government has more flexibility when dealing with immigration. *See, e.g., United States v. Quintana*, 623 F.3d 1237, 1242 (8th Cir. 2010) (explaining that the "constitutional[ ] valid[ity]" of detention pending deportation means that the usual limits on *Terry* stops "do[ ] not apply to ... administrative arrest[s] based upon probable cause that an alien is deportable"); *see also Wong Wing v. United States*, 163 U.S. 228, 235, 16 S.Ct. 977, 41 L.Ed. 140 (1896) (explaining that the power to deport "would be vain if those accused could not be held in custody pending [an] inquiry into their true character and while arrangements were being made for their deportation").

*Banyee*, 115 F.4th at 931.

The Eighth Circuit explained further,

> It is true, as Banyee emphasizes, that the Court has described detention pending deportation as "brief," "limited," and "short[ ]." *Demore*, 538 U.S. at 513, 523, 526, 528–29, 531, 123 S.Ct. 1708. But nothing suggests that length determines legality. To the contrary, what matters is that detention pending deportation "ha[s] a definite termination point"—deporting or releasing the alien—making it "materially different" from the "potentially permanent" confinement authorized by other statutes. *Id*. at 528–29, 123 S.Ct. 1708 (citation omitted); *see Zadvydas v. Davis*, 533 U.S. 678, 697, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) (drawing the same definite-versus-indefinite distinction); *cf. Borrero v. Aljets*, 325 F.3d 1003, 1008 (8th Cir. 2003) (holding that even indefinite detention can be constitutional for "alien[s] who [are] stopped at the border"). The *why*, in other words, is more important than *how long*. *See Zadvydas*, 533 U.S. at 693–94, 121 S.Ct. 2491 (noting that "the nature of th[e] protection" to which aliens are entitled "var[ies] depending upon *status and circumstance*" (emphasis added)).

*Banyee*, 115 F.4th at 932 (emphasis in the original).

The Eighth Circuit then stated,

> These cases leave no room for a multi-factor "reasonableness" test. It is true, as Banyee has pointed out, that deciding what process is due ordinarily requires a form of interest balancing. *See Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). But *Zadvydas* and *Demore* have already done whatever balancing is necessary. *See, e.g., Zadvydas*, 533 U.S. at 682, 701, 121 S.Ct. 2491 (linking a "'reasonable time' limitation" to "the likelihood of removal in the reasonably foreseeable future"); *Demore*, 538 U.S. at 528, 123 S.Ct. 1708 (explaining that, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means," so it is

> sufficient if "detention necessarily serves the purpose of preventing deportable aliens from fleeing prior to or during their removal proceedings"). Indeed, the lead dissent in *Demore* advocated for the type of "individual determination" Banyee now seeks, presumably under a *Mathews*-type inquiry. 538 U.S. at 549–58, 561 n.16, 123 S.Ct. 1708 (Souter, J., concurring in part and dissenting in part); *cf. Flores*, 507 U.S. at 314 n.9, 113 S.Ct. 1439 (rejecting *another* dissent's call for "fully individualized custody determinations"). The majority opted for a bright-line rule instead: the government can detain an alien for as long as deportation proceedings are still "pending." *Demore*, 538 U.S. at 527, 123 S.Ct. 1708 (majority opinion).

*Banyee*, 115 F.4th at 933 (emphasis in the original).

For Saucedo Gonzalez, like the petitioner in *Banyee*, the removal proceedings are apparently still pending. *Id.*; *see generally* Filing 1 (basing his claim primarily on cases considering detention pending a final determination of removal). Because Saucedo Gonzalez's detention is pursuant to § 1225(b), there is no authorization for a bond hearing. *See Jennings*, 583 U.S. at 297 (explaining that "neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings"). To the extent that Saucedo Gonzalez contends that he is being held without an individualized detention hearing under § 1226, his detention is pursuant to § 1225(b) without any bond provision. "Congress may make rules as to aliens that would be unacceptable if applied to citizens," and "the government has more flexibility when dealing with immigration." *Banyee*, 115 F.4th at 931 (internal quotation marks and citations omitted).

Saucedo Gonzalez cannot meet his burden based on the allegations in his Petition to show that because of a procedural due process violation he is detained in violation of federal law. *See* 28 U.S.C. § 2241(c)(3) (stating detention in violation of federal law is a ground for habeas relief); 28 U.S.C. § 2243 (stating that an order to show cause must issue "unless it appears from the application that the applicant or person detained is not entitled" to a writ of habeas corpus); *Maldonado*, 2025 WL 2374411, at *4 (explaining that a habeas petitioner under § 2241 bears the burden of demonstrating by a preponderance of the evidence that his or her detention is unlawful (collecting cases)).

## III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that Petitioner Saucedo Gonzalez's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and Complaint for Injunctive Relief, Filing 1, is denied because it appears from the Petition alone that Saucedo Gonzalez is not entitled habeas relief.

The Clerk of Court shall close the case.

Dated this 29th day of September 2026.

BY THE COURT:

Brian C. Buescher
Chief United States District Judge